# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOHN M. FRANKLIN, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )      Civ. A. No. 06-378-GMS |
| | ) |
| PERRY PHELPS, Warden, and | ) |
| ATTORNEY GENERAL OF THE | ) |
| STATE OF DELAWARE, | ) |
| | ) |
| Respondents.[1] | ) |

———————————

John M. Franklin. *Pro se* petitioner.

Kevin M. Carroll, Deputy Attorney General, Delaware Department of
Justice, Wilmington, Delaware. Attorney for respondents.

———————————

## MEMORANDUM OPINION

Nov. 16 , 2009

Wilmington, Delaware

———————————

[1]Warden Perry Phelps assumed office in January, 2008, replacing Warden Thomas
Carroll, an original party to this case. *See* Fed. R. Civ. P. 25(d)(1).

Sleet, Chief District Judge

## I. INTRODUCTION

Petitioner John M. Franklin ("Franklin") is an inmate at the James T. Vaughn

Correctional Center in Smyrna, Delaware. Franklin filed the pending petition for a writ of

habeas corpus and memorandum in support (collectively referred to as "petition") pursuant to 28

U.S.C. § 2254. (D.I. 2; D.I. 6.) The State filed an answer in opposition, and Franklin filed a

reply. (D.I. 19; D.I. 29.) For the reasons that follow, the court will dismiss Franklin's petition in

its entirety without an evidentiary hearing.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In June 2003, Franklin was charged by information with eleven offenses: five counts of

first degree rape, one count of terroristic threatening, one count of endangering the welfare of a

child, one count of driving under the influence (fourth offense), two counts of third degree

unlawful sexual contact, and one count of sexual harassment. *Franklin v. State*, 901 A.2d 119

(Table), 2006 WL 1374675 (Del. May 17, 2006). On October 27, 2003, the Delaware Superior

Court severed the charges into three cases. In one of those cases, a Superior Court jury convicted

Franklin of five counts of first degree rape, one count of terroristic threatening, and one count of

endangering the welfare of child. *Franklin v. State*, 869 A.2d 327 (Table), 2005 WL 528674

(Del. Mar. 2, 2005). The charges stemmed from allegations that Franklin engaged in unlawful

sexual intercourse with his wife, Karen, over a period of several days and threatened to cut her

throat in the presence of their daughter. The Superior Court sentenced Franklin to 125 years

imprisonment at Level V incarceration on the first degree rape charges, with the first 75 years as

mandatory; one year imprisonment at Level V incarceration on the terroristic threatening charge;

1

and one year imprisonment at Level III probation on the endangering the welfare of a child

charge. Franklin appealed, and the Delaware Supreme Court affirmed his convictions and

sentences. *Id.*

In August 2005, acting *pro se,* Franklin filed in the Delaware Superior Court a motion

for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61

motion"), alleging two ineffective assistance of counsel claims. *See Franklin v. State*, 901 A.2d

119 (Table), 2006 WL 1374675 (Del. 2006). He also requested an expansion of the record and

moved for the trial judge to recuse himself from considering Franklin's motions. *Id.* The

Superior Court granted Franklin's motion to expand the record, but denied his other motions,

including the Rule 61 motion. *State v. Franklin*, ID # 0304010407, Letter Opinion, Stokes, J.

(Del. Super. Ct. Nov. 29, 2005)(hereinafter referred to as "*Franklin*, Letter Opinion"). The

Delaware Supreme Court affirmed that decision. *Franklin*, 2006 WL 1374675.

Franklin timely filed the instant § 2254 petition, and the State filed an answer requesting

the court to deny the petition in its entirety. (D.I. 19.) Franklin filed a reply. (D.I. 29.) His

petition is ready for review.

## III. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

"to reduce delays in the execution of state and federal criminal sentences . . . and to further the

principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206

(2003)(internal citations and quotation marks omitted). Pursuant to AEDPA, a federal court may

consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in

2

violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas

petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are

given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see*

*Woodford*, 538 U.S. at 206.

## B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the

petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b);

*O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275

(1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to
> the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>     (ii) circumstances exist that render such process ineffective to protect the rights of the
>     applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to

give "state courts one full opportunity to resolve any constitutional issues by invoking one

complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at

844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion

requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest

court, either on direct appeal or in a post-conviction proceeding. *See Lambert v. Blackwell*, 134

3

F.3d 506, 513 (3d Cir. 1997)(citations omitted); *Coverdale v. Snyder*, 2000 WL 1897290, at \*2 (D. Del. Dec. 22, 2000). "Fair presentation of a claim means that the petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004)(internal citations omitted).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *Wenger v. Frank,* 266 F.3d 218, 223 (3d Cir. 2001); *see Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Nevertheless, such unexhausted claims are procedurally defaulted. *Lines,* 208 F.3d at 160. Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman v. Thompson,* 501 U.S. 722, 750-51 (1991); *Caswell v. Ryan,* 953 F.2d 853, 861-62 (3d Cir. 1992). To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir.

4

2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation

has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at

496. Actual innocence means factual innocence, not legal insufficiency, *Bousley v. United

States*, 523 U.S. 614, 623 (1998), and is established if no reasonable juror would have voted to

find the petitioner guilty beyond a reasonable doubt. *Sweger v. Chesney,* 294 F.3d 506, 522-24

(3d Cir. 2002).

### C. Standard of Review Under AEDPA

If a federal court determines that a claim is not procedurally defaulted and the state court

adjudicated the federal claim on the merits, the court can only grant habeas relief if the state

court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of,
> clearly established Federal law, as determined by the Supreme Court of the United States;
> or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in
> light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250

F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of

28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its

substance, rather than on a procedural or some other ground. *Thomas v. Horn*, 570 F.3d 105, 115

(3d Cir. 2009).

When reviewing a § 2254 petition, a federal court must presume the state court's

determinations of factual issues are correct, unless the petitioner presents clear and convincing

evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 341

(2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues,

5

whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).

## IV. DISCUSSION

Franklin asserts the following five claims for relief: (1) the trial court committed an error of law by failing to issue a *sua sponte* order to disallow certain improper expert opinion testimony which invaded the province of the jury on ultimate issues in the case and undermined the fairness of the trial; (2) the trial court violated his due process rights by admitting into evidence prior bad acts without a sufficient limiting jury instruction; (3) his due process rights were violated because the prosecutor's question elicited evidence which injected a racial element into the trial; (4) trial counsel provided ineffective assistance of counsel; and (5) the Superior Court judge erroneously denied his Rule 61 motion and the Delaware Supreme Court unfairly treated his appeals.

### A. Claim one: improper admission of expert testimony

At trial, Franklin requested that the sexual assault nurse examiner ("SANE") Holbrook ("Nurse Holbrook") who examined his wife Karen not be permitted to opine that Karen's injuries were caused by sexual assault. After extensive discussion, the trial court ruled that Nurse Holbrook would be permitted to express her opinion that the injuries observed were consistent with non-consensual intercourse. The trial court also found that Nurse Holbrook was qualified to testify as a medical expert.

On direct examination during the State's case-in-chief, Nurse Holbrook described the bruises she had observed on Karen's body, as well as a small tear on the posterior fourchette near

6

Karen's anus. According to Nurse Holbrook, seventy percent of victims of non-consensual intercourse have an injury in the posterior fourchette area. Nurse Holbrook testified that she was able to form an opinion that the intercourse in this case was non-consensual based upon her studies, her observations of Karen's injuries, and what Karen had told her about the incidents. On cross-examination, defense counsel focused on the posterior fourchette tear, and asked Nurse Holbrook whether she was aware of such tearing occurring with consensual sexual intercourse; Nurse Holbrook replied that she had not witnessed such posterior fourchette tears with consensual intercourse. On redirect, Nurse Holbrook reiterated her opinion that the injuries she had observed were consistent with non-consensual intercourse.

The defense called its own SANE nurse, Nurse Brown, who testified that the tear observed by Nurse Holbrook in the posterior fourchette area was, in fact, a little vesicle or blister that had ruptured and was healing. Nurse Brown testified that a negative herpes blood test done on Karen on February 9, 2004 had no significance with respect to Karen's condition in April 2003; according to Nurse Brown, there had to be active lesions present, open and draining, in order to get a positive herpes culture. She also testified that the bruises on Karen's breasts were not fresh, and that the redness on Karen's outer genitalia could have been caused by trauma, infection, or irritation. Nurse Brown further stated that the bruising and lesion on Karen may or may not be related to non-consensual intercourse, that it is possible to have a posterior fourchette tear in consensual intercourse, and that it was not possible for her or any SANE nurse to render an opinion that injuries observed on a person resulted from or were caused by consensual sex or non-consensual sex.

Following the defense's case, the State recalled Nurse Holbrook to the stand. She

7

testified that she had examined the red area in the posterior fourchette, and that she had physically manipulated the tissue and opened it up. This testimony was in contrast to the testimony offered by Nurse Brown, who had only reviewed photocopies of photographs of the injured areas before forming her opinions, and then reviewed the actual photographs at trial. Nurse Holbrook testified that what she saw was a tear, and again gave her opinion on the basis of all she had observed that Karen's injuries were consistent with non-consensual sexual intercourse. At that juncture, the trial judge informed the jury that the issue of consent was for the jury to decide. The trial judge also instructed the jury during his final charge that

> [e]xpert witnesses may state their opinions and reasons for their opinions because by their education and experience they have become expert in their field.
>
> You should give such expert testimony only the weight you feel it deserves. If it is not based upon sufficient education or experience, or if the reasons given in support thereof are not sound, and you feel it is outweighed by other evidence, you may disregard it entirely.

(D.I. 26)

In claim one of this proceeding, Franklin contends that the fairness of his trial was undermined by the trial judge's failure to *sua sponte* order the exclusion of Nurse Holbrook's testimony that "the intercourse [between Franklin and his victim] was non-consensual based on her studies, her observation of [the victim's injuries] and what [the victim] had told her about the multiple rapes." *Franklin*, 2005 WL 528674, at *1. On direct appeal, the Delaware Supreme Court considered Franklin's present argument, but held that the admission of Nurse Holbrook's expert testimony was proper under Delaware Rule of Evidence 704.[2] In addition, pursuant to

---

[2] According to Rule 704, "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable merely because it embraces an ultimate issue to be decided by the trier of fact."

8

Delaware precedent, an expert's opinion embracing an ultimate issue in the case regarding the consensual nature of the sex does not invade the province of the jury. *Id.* The Delaware Supreme Court alternatively held that, even if the testimony provided by the prosecution's nurse was inadmissible, the trial court's instruction cured any possible prejudice stemming from the comments and rendered them harmless beyond a reasonable doubt. *Id.*

The State does not raise the issue of exhaustion with respect to claim one, and therefore, the court views the State as having waived the defense.[3] The court notes that the Delaware Supreme Court considered Franklin's argument regarding Nurse Holbrook's testimony under Delaware law, and not as a federal due process issue. Therefore, the court will apply the pre-AEDPA standard and review the claim *de novo*.[4] *See Holloway v. Horn*, 355 F.3d 707, 718-19 (3d Cir. 2004).

It is well-settled that claims based on state court evidentiary errors cannot warrant habeas relief unless the petitioner demonstrates that the error was so pervasive that he was denied his fundamental right to a fair trial. *See Estelle v. McGuire*, 502 U.S. 62, 67-8 (1991)(holding that claims asserting a violation of a state law, or challenging a state court's interpretation of state law, are not cognizable on federal habeas review); *Keller v. Larkins*, 251 F.3d 408, 413 (3d Cir. 2001); *Biscaccia v. Attorney General of Sate of N.J*, 623 F.2d 307, 312 (3d Cir. 1980). As an initial matter, the court notes that it must accept as correct the Delaware Supreme Court's

---

[3]In contrast, the State argues that Franklin did not exhaust state remedies for claims two and three because he did not fairly present those claims to the Delaware Supreme Court as federal claims.

[4]*De novo* review means that the court "must exercise its independent judgment when deciding both questions of constitutional law and mixed constitutional questions." *Williams v. Taylor*, 529 U.S. 362, 400 (2000)(Justice O'Connor concurring).

conclusion that Nurse Holbrook's testimony was properly admitted under the Delaware Rules of

Evidence. Nevertheless, even if the trial court did erroneously admit Nurse Holbrook's

testimony, Franklin has failed to demonstrate that the admission of that testimony rendered his

trial fundamentally unfair. Nurse Holbrook's testimony regarding the non-consensual nature of

the sexual act was counterbalanced by Nurse Brown's testimony regarding the consensual nature

of the act, and the jury was instructed that the issue of consent was for it to decide, not the

experts. Juries are presumed to follow the court's instructions, and Franklin has not produced

any evidence that the jury did not follow the instructions in his case. *See Richardson v. Marsh*,

481 U.S. 200, 211 (1987). Consequently, although Nurse Holbrook's testimony embraced the

ultimate issue of consent, the jury was free to evaluate Nurse Holbrook's and Nurse Brown's

credibility and to accept or reject one testimony over the other. Accordingly, the court will deny

claim one.

### B. Claim two: introduction of prior bad acts evidence

In claim two, Franklin contends that the admission of "prior bad acts" evidence violated

his right to due process. Specifically, he contends that the trial court erred by admitting evidence

of his previous assault on Karen in 1988, his drinking history, and his viewing of pornographic

movies, and that the jury instruction was insufficient to limit the prejudicial effect of this

evidence.

The court concurs with the State's assertion that Franklin has failed to exhaust state

remedies for this claim. First, as explained by the United States Supreme Court, "[i]f a habeas

petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due

process of law guaranteed by the Fourteenth Amendment, he must say so." *Duncan v. Henry*,

10

513 U.S. 364, 366 (1995)(holding that a claim of "miscarriage of justice" does not qualify as a

federal constitutional claim"). The Third Circuit Court of Appeals has clarified this rule,

specifically holding that

> [a petitioner does] not invoke the federal due process guarantee [by claiming that] the
> admission of the evidence produced a "miscarriage of justice" [or] argu[ing] that the [trial
> process] denied him a "fair trial." Since the Supreme Court found the former language
> insufficient to give fair notice of a federal due process claim, we are hesitant to attach
> greater significance to the passing reference to the concept of a "fair trial" on which [the
> petitioner's] argument rests.

*Keller v. Larkins*, 251 F.3d 413-15 (3d Cir. 2001). After viewing Franklin's presentation of

claim two to the Delaware Supreme Court on direct appeal within the framework provided by the

aforementioned precedent, the court concludes that Franklin has not satisfied the "fair

presentation" component of the exhaustion doctrine because he presented the instant claim to the

Delaware Supreme Court in terms of a state evidentiary error.[5] In addition, Franklin did not

present any claim based on the allegedly erroneous admission of the prior bad acts evidence in

his Rule 61 motion or in his subsequent post-conviction appeal. Therefore, the court concludes

Franklin has not exhausted state remedies for claim two.

---

[5]On direct appeal, Franklin's argument contained one brief sentence asserting that the
admission of the prior bad acts evidence deprived him of a fair trial. The caption of his appellate
argument stated that "it was error of law to allow unduly prejudicial 'other acts' evidence, and
the jury instruction was insufficient to limit the use and prejudicial impact of that evidence."
Franklin's "main complaint [was] that the introduction of the 1988 assault incident in which he
broke a bone in Karen's face was too remote and prejudicial, and its admission deprived him of a
fair trial." (D.I. 26, Appellant's Op. Br. in *Franklin v. State*, No.106,2004, at.p. 14.) . The
substance of the argument focused on Franklin's belief that the "prior bad acts" evidence "should
have been determined to be too prejudicial and too remote under the relevancy and prejudice
standards of Delaware Rules of Evidence 401 and 403 and the analysis required by *Getz v. State*,
538 A.2d 726 (Del. 1988) and *Deshields v. State*, 706 A.2d 502 (Del. 1998)." *Id*. at p. 29. In
addition, the Delaware Supreme Court analyzed the claim in terms of state evidentiary issue, not
as a possible federal due process violation.

11

At this juncture, state procedural rules would bar Franklin from obtaining further review of claim two in the Delaware state courts.[6] Consequently, the claim is deemed exhausted but procedurally defaulted, and the court can only reach the merits of claim two if Franklin demonstrates cause for his procedural default and prejudice resulting therefrom, or that a miscarriage of justice will result in the absence of habeas review.

Franklin has not asserted, and the court cannot discern, any cause for his default of the instant claim. In the absence of cause, the court will not address the issue of prejudice. Additionally, the miscarriage of justice exception to the procedural default doctrine does not excuse Franklin's default because he has not provided any new reliable evidence of his actual innocence. Accordingly, the court will deny claim two as procedurally barred.

Nevertheless, even if claim two should be treated as exhausted, the claim lacks merit.[7] In 1988, Franklin was convicted of assault afer breaking a bone in Karen's face. This incident occurred 14 years before the rapes, and a few years before Franklin and Karen were married. Franklin opposed the introduction of this evidence, arguing that it was too remote in time and

---

[6]Franklin cannot exhaust state remedies by including claim two in a new Rule 61 motion in order to appeal an adverse decision to the Delaware Supreme Court. Delaware Superior Court Criminal Rule 61(i)(2) would bar review of the claim as repetitive, and Rule 61(i)(3) would bar review of the claim as procedurally defaulted for failure to raise the claim on direct appeal. *See, e.g., Lawrie v. Snyder*, 9 F. Supp. 2d 428, 453 (D. Del. 1998)(Rule 61(i)(2) bars any ground for relief that was not asserted in a prior proceeding); *Bright v. Snyder*, 218 F. Supp. 2d 573, 580 (D. Del. 2002)(Rule 61(i)(3) would bar the Superior Court from considering the claim because Franklin did not raise the claim in the proceedings leading to his conviction).

[7]If the court should somehow view Franklin's presentation of claim two to the Delaware Supreme Court as raising a federal due process issue, the state supreme court did not address the claim as such. Consequently, the court will apply the pre-AEDPA standard and review the claim *de novo. See Holloway v. Horn*, 355 F.3d 707, 718-19 (3d Cir. 2004).

lacked a sufficient nexus to the alleged sexual assaults for which he was on trial. Franklin also contended that the evidence suggested a propensity or continuity of violence against Karen, and therefore, was unduly prejudicial. The State argued that the assault was not too remote given its nature and how it related to Karen's ongoing state of mind. The trial court ruled that Franklin's intimidating and belligerent pattern of behavior over time, his mood swings, drinking, and threats, were pertinent to Karen's state of mind, from which the jury could infer reasons for Karen's lack of resistance. The trial court also found that the evidence was pertinent to Franklin's state of mind to control Karen, if not to sexually subjugate her. As for the remoteness question, the trial court found that Karen's state of mind could not be understood in isolation; the jury needed to be aware of the entire continuum of experiences of this couple, even though this particular incident occurred beyond the ten-year guideline for the admission of prior bad acts evidence suggested in *Getz*.

The State also attempted to admit into evidence three x-rated videotapes that Franklin had been viewing on the night of the assault. The trial court excluded these tapes after determining that it would be cumulative and prejudicial to show them to the jury. However, the trial court did permit the State to play an excerpt from one tape; Franklin had attempted to show the tapes to Karen because they portrayed an unusual and distinctive sexual activity that he allegedly performed on her, and the trial court ruled that the excerpt from one tape was pertinent to the issue of consent.

The jury was instructed on the limited purpose for which the prior bad acts evidence was admitted, namely, to determine issues relevant to the charged crimes of first degree rape. With respect to the 1988 assault and Franklin's drinking history, the jury was instructed that this

13

evidence could only be considered in relation to Franklin's intent, plan and pattern, and absence

of mistake or accident, as well as Karen's state of mind when the charged offenses of first degree

rape allegedly happened.[8] As for Franklin's use of the adult videos during the time of the alleged

rape, the jury was instructed that it could only consider the tapes if the jurors determined that

they tended to show Franklin's intent and absence of mistake or accident at the time of the

alleged offenses of rape.

On direct appeal, Franklin argued that the evidence of the prior bad acts was too remote

in time and lacked a sufficient nexus to the alleged sexual assaults for which he was on trial.

---

[8]The court instructed the jury as follows:

> The defendant is charged with five counts of rape in the first degree concerning
> [Karen]. You have heard evidence of other acts at and before the time of the
> alleged rapes allegedly occurring between April 11[th] and the 15[th], 2003. The other
> alleged acts include acts of drinking and mood swings, offensive behavior toward
> [Karen], threats to [Karen's] father and son and Franklin's alleged use of adult
> videotapes and a sexual encounter over the April 11th weekend, which was not
> completed.

> You may not consider evidence relating to these other acts allegedly committed by
> the defendant for which he's not now on trial for the purpose of concluding that
> he is of a certain character, or possesses a certain character trait, and that he was
> acting in conformity with that character or character trait with respect to the
> crimes charged in this case. Similarly, you must not use the evidence to infer or
> conclude that the defendant is a bad person, or that he has a pre-disposition to
> commit criminal acts, and that he is, therefore, probably guilty of the charged
> crimes.

> You may, however, use evidence relating to other acts allegedly committed by the
> defendant only to help you to determine issues relevant to the charged crimes of
> first degree rape. The State contends that the evidence relates to proof of the
> defendant's intent, plan and pattern and absence of mistake or accident as well as
> [Karen's] state of mind at the time when the charged offenses of rape first degree
> allegedly happened. You may consider such evidence for these limited purposes
> only.

(D.I. 27, App. to Appellant's Op. Br. in *Franklin v. State*, No.106, 2004, at A-259 to A-260.)

Franklin also contended that the evidence suggested a propensity or continuity of violence against Karen, and was therefore unduly prejudicial. On direct appeal, the Delaware Supreme Court held that the evidence was properly admitted under Delaware law, that the evidence was not unduly prejudicial, and that the trial court gave a proper limiting instruction.

Presuming that Franklin's instant claim is premised on the same arguments raised in his direct appeal, the court finds no basis on which to conclude that the admission of the "prior bad acts" evidence violated Franklin's right to due process. To begin, there is no clearly established Supreme Court precedent which holds that a state violates due process by admitting propensity evidence in the form of other bad acts evidence. *See Estelle v. McGuire*, 502 U.S. 62, 75 n.5 (1991)(expressly withholding an opinion as to whether a state law would violate the Due Process Clause if it permitted the use of "prior crimes" evidence to show propensity to commit a crime.) In turn, the court concludes that Franklin's argument that the prior bad acts were too remote in time, that they lacked a sufficient nexus to the charged sexual crimes, and that they were being used to show a propensity for violence does not warrant federal habeas relief. As explained by the Third Circuit Court of Appeals, "admission of other crimes evidence provides a ground for federal habeas relief [as violating the petitioner's due process rights] only if the evidence's probative value is so conspicuously outweighed by its inflammatory content." *Bronshtein v. Horn*, 404 F.3d 700, 730 (3d Cir. 2005). As for the admission of prior bad acts evidence, the court "cannot disturb on federal due process grounds a state court's decision to admit prior bad acts evidence unless the admission of the evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair." *Moss v. Nelson*, 2008 WL 4542302, at *14 (M.D. Pa. Oct. 9, 2008).

15

The theory offered by the defense during Franklin's trial was that the sex between Franklin and Karen was consensual. The "prior bad acts" evidence was essential to putting the charged assaults in context and to establishing both Franklin's intent and Karen's state of mind. Franklin has not shown an "overwhelming probability" that the jury was unable to follow the trial court's instructions limiting the use of the evidence for these purposes. In addition, it cannot be said that the state trial court's decision to admit the prior bad acts evidence was arbitrary and so prejudicial that it rendered the trial fundamentally unfair. And, after viewing the prior bad acts evidence in context, the court cannot say that the probative value of the evidence was conspicuously outweighed by its inflammatory content. Accordingly, if Franklin's presentation of claim two to the Delaware Supreme Court exhausted state remedies for federal habeas purposes, the court alternatively denies the claim as meritless.

### C. Claim three: the prosecutor's question injected an improper racial element into the trial

Karen had an affair with an African-American man named Darnell during a period of separation from Franklin. Prior to trial, the State argued that it should be allowed to introduce evidence of Darnell's race because it was relevant to Franklin's motive and state of mind, and was also inextricably intertwined with the rapes. According to the State's proffer, Franklin had repeatedly told his wife that he was going to "f" her like a "n." Franklin objected, claiming that the State was trying to inject the issue of race and that the evidence lacked any probative value.

The trial court weighed the probative value of the proffered evidence against its potential for unfair prejudice, and ruled that any reference to race in the statements of Franklin and Karen should be redacted, and that the defense should not be permitted to cross-examine Karen about

her alleged affair with an African-American. The trial court initially suggested a compromise by which the State would be allowed to elicit testimony that Franklin wanted to "f" his wife "like the name he called Darnell." After further discussion, the trial court ruled that the State had a good faith basis to believe that the identity of Karen's lover could have aggravated the feelings resulting from the affair and might show a reason why the alleged rapes occurred. As a result, the trial court concluded that the State could "refer to the identity of the alleged lover . . . [t]he language can be substituted like Darnell B[]. The State has a good faith basis to believe that Darnell B[] was involved. The identity of the alleged lover can aggravate the feelings resulting from an affair to show a reason why the alleged rapes occurred. At the same time, substitution of these words eliminates the words of unfair prejudice. So Rule 403 would be satisfied." (D.I. 26, App. to Appellant's Op. Br. in *Franklin v. State*, No.106,2004, at A-60 to A-61.)

Thereafter, when the prosecutor questioned Karen about Franklin's statements to her, he used the phrase, "like a name [or word] he used for Darnell." The defense did not object to the prosecutor's questions phrased in this manner until, during the State's cross-examination of Detective Corrigan, it appeared as though the Detective might repeat the exact words used by Franklin. The defense objection was sustained by the trial court. The prosecutor questioned Detective Corrigan again about the issue, apparently trying to clarify the question by using the phrase "'f'her like the name." The defense objected, and the trial court told the prosecutor to move on.

On appeal, Franklin argued that the prosecutor's question violated the trial court's "clear pre-trial ruling on the subject," implied that Franklin was a racist, and violated his right to a fair trial. The Delaware Supreme Court construed the claim as alleging that the reference that

17

Franklin was going to "'f' his wife like a name he called Darnell" improperly injected the issue

of race into the criminal proceeding in violation of his rights to due process and to trial by an

impartial jury. *Franklin*, 2005 WL 528674, at *2. The Delaware Supreme Court rejected the

argument, opining that

> Franklin has failed to show that the State had a deliberate intent to create a racial bias
> against him so as to strengthen its case. Franklin's use of the word was relevant to his
> state of mind and intent to rape his wife, who had an affair with [Darnell] [].
> Furthermore, the trial court instructed the jury that passion, prejudice, sympathy, public
> opinion or motive may not influence their decision. The jury is presumed to have
> followed the trial court's instructions.

*Id.*

In claim three of this proceeding, Franklin complains that the prosecutor's question

elicited evidence injecting an improper racial element into his trial in violation of his due process

rights. The State contends that Franklin did not exhaust state remedies for this claim because he

did not present the argument to the Delaware Supreme Court as *federal* due process issue. After

reviewing the record, the court concludes that it need not consider if Franklin fairly presented the

instant claim, because the Delaware Supreme Court actually did review the merits of the claim as

if it raised a federal due process argument. Thus, the court will review the claim under §

2254(d)(1) to determine if the Delaware Supreme Court's decision was either contrary to, or an

unreasonable application of, clearly established Federal law.

The United States Supreme Court has "engaged in unceasing efforts to eradicate racial

prejudice from our criminal justice system." *McCleskey v. Kemp*, 481 U.S. 279, 209 (1987).

Although improper racial and ethnic references "can be so prejudicial as to result in a denial of

due process,". . . "not all racial and ethnic references are so prejudicial as to constitute due

18

process violations." *Moore v. Morton*, 255 F.3d 95, 113-14 (3d Cir. 2001). In turn, to prevail on a claim of prosecutorial misconduct, a petitioner must show that the prosecutor's statements and/or actions were actually improper, and that such statements or actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *See Darden v. Wainwright*, 477 U.S. 168, 180-81 (1986). Pursuant to Supreme Court precedent, "the reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." *Moore*, 255 F.3d at 107. A prosecutor's improper comments violate due process when they materially affect the outcome. *See Smith v. Phillips*, 455 U.S. 209, 219-20 (1982).

As an initial matter, based upon the portion of the trial transcript set forth below, the court finds that Franklin has not established that the prosecutor's reference to the edited versions of Franklin's statements was improper.

Corrigan: She stated to me that he was intoxicated and agitated, as well.

Prosecutor: And then how did she describe what occurred to her Friday night into Saturday morning?

Corrigan: Stated that she was sleeping in her bedroom with her then four-year-old daughter and at that point, Mr. Franklin had entered the bedroom and she woke to him slapping her in her facial cheek with his penis.

Prosecutor: Making the statements that we described before?

Corrigan: Exactly what he said, yes. He stated he was going to - - if you want me to repeat it, I will.

Defense counsel: Objection, your honor.

Court: Yes. That is sustained.

19

Prosecutor: Essentially, "f" her like the name?

Corrigan: Yes.

Defense counsel: Objection, your Honor.

Court: Move on, [prosecutor], please.

(D.I. 25, App. to Appellant's Op. Br. in *Franklin v. State*, No.106,204, at A-160.)

In turn, as the Delaware Supreme Court explained, the prosecutor's reference at issue here was relevant to Franklin's state of mind and his intent to rape his wife, who had engaged in an affair with Darnell. The court also notes that the prosecutor had previously and frequently described Franklin as saying that he was going "to "f" his wife "like the name he called Darnell," and nothing in the record provided indicates (and Franklin does not allege) that the prosecutor ever mentioned Darnell's race. Consequently, the court sees nothing improper in the prosecutor's shorthand reference to Franklin's statement as "like the name."

Moreover, even if the prosecutor's reference was improper, it is not clear to the court that the jury would have necessarily inferred or detected a racial issue when the prosecutor referred to Franklin's statement in terms of "like the name." Thus, when viewed in context with the entire record, including the trial court's instruction to the jury disregard prejudice,[9] the court concludes that the prosecutor's comment was not so prejudicial that it materially affected the outcome.

---

[9]More specifically, the trial judge instructed the jury

> that your verdict must be based solely and exclusively on the evidence in the case; that you cannot be governed by passion, prejudice, sympathy, public opinion, or any motive whatever except a fair and impartial consideration of the evidence; and that you must not, under any circumstances, allow any sympathy which you might have or entertain for any of those involved to influence you in any degree whatsoever in arriving at your verdict. (D.I. 26, App. to State's Ans. Br. in *Franklin v. State*, No.106,2004, at B-105.)

20

Accordingly, the court will deny claim three.

### D. Claim four: ineffective assistance of counsel

In claim four, Franklin asserts that defense counsel provide ineffective assistance in the following manner: (1) counsel did not move for the recusal of the trial judge; (2) counsel failed to present mitigating evidence at trial; (3) counsel did not object to Franklin's immediate sentencing; and (4) counsel failed to effectively cross-examine the State's expert witness, Nurse Holbrook.

After reviewing the record, the court concurs with the State's assertion that Franklin did not exhaust state remedies for his fourth allegation because he did not include the claim regarding counsel's cross-examination of Nurse Holbrook in his Rule 61 motion or on post-conviction appeal. Consequently, the claim is procedurally defaulted for federal habeas purposes because any attempt on Franklin's part to present this claim in a new Rule 61 proceeding would be foreclosed by Delaware Criminal Rule 61(i)(2). Franklin does not assert any cause for his failure to raise the instant allegation in his Rule 61 motion, and therefore, the court does not need to address the issue of prejudice. In addition, Franklin has not indicated that his default should be excused in order to avoid a miscarriage of justice, because he has not provided any reliable evidence of his actual innocence. Accordingly, the court will deny Franklin's complaint about trial counsel's failure to properly cross-examine Nurse Holbrook as procedurally barred.

As for the remaining three assertions of ineffective assistance, the record clearly demonstrates that the Delaware Supreme Court denied the arguments on their merits. Therefore, the court must review the Delaware Supreme Court's decision under § 2254(d)(1) to determine if it is contrary to, or an unreasonable application of, clearly established Federal law.

21

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688. In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

Here, the Superior Court identified *Strickland* as the proper standard and analyzed Franklin's allegations regarding counsel's performance within its framework. Therefore, the Delaware Supreme Court's affirmance of the Superior Court's decision is not contrary to *Strickland*. *Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

The court's inquiry is not over, however, because it must also determine whether the Delaware Supreme Court reasonably applied *Strickland* in denying Franklin's remaining three

22

ineffective assistance of counsel arguments. The court will address each argument *in seriatim*.

### 1. Failure to move for recusal of trial judge

In October 2003, the Superior Court severed eleven charges pending against Franklin into three cases. The first case, tried before a jury in October and November 2003, involved one single charge of driving under the influence. The jury convicted Franklin, and he was sentenced to four years at Level V, suspended after six months upon successful completion of the Key Program for decreasing levels of supervision. The second case was heard before a jury in December 2003 and involved two counts of third degree unlawful sexual contact and one count of unlawful sexual harassment. Franklin was acquitted. The third case is the rape case at issue in this proceeding. The same Superior Court judge presided over all three trials.

In August 2005, Franklin filed a Rule 61 motion for post-conviction relief regarding the instant rape case, and the same judge who had presided over all three of Franklin's trials was assigned to his Rule 61 proceeding. Franklin filed a related motion to expand the record with an affidavit from his sister attesting to his history of learning difficulties at school, a motion to disqualify the trial judge from considering his Rule 61 motion, and a motion for an evidentiary hearing. In the same decision, the judge denied the recusal motion, granted the expansion of the record, and summarily denied the Rule 61 motion (and the evidentiary hearing request).

In this proceeding, Franklin contends that the trial judge's prior knowledge of his drinking, mood swings, and prior bad acts biased the judge and rendered the judge incapable of dispensing justice fairly. As a result, Franklin alleges that counsel performed ineffectively by failing to file a motion for the judge's recusal in Franklin's trial for rape.

After reviewing the record, the court concludes that Franklin was not denied the right to

23

effective assistance of counsel when defense counsel chose not to seek the trial judge's recusal. In denying Franklin's motion for recusal with respect to his Rule 61 proceeding, the judge noted that the moving party for recusal must set forth facts showing a lack of impartiality, and explained that "the alleged bias or prejudice must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *Franklin*, Letter Opinion, at pp. 3, 5. The judge presiding over Franklin's Rule 61 proceeding found that Franklin did not set forth any facts or evidence establishing a lack of impartiality. *Id.* at pp.4-5. The judge further explained that previously having sentenced Franklin was not enough to require his recusal, and that he did not have any personal bias or prejudice against Franklin. *Id.*

After denying Franklin's motion for recusal, the Rule 61 judge then considered Franklin's claim that counsel was ineffective for failing to file a motion for the trial judge to recuse himself from Franklin's rape trial. The Rule 61 judge referred to the well-established principle in Delaware that a judge is not *per se* disqualified from presiding over successive trials involving the same defendant, and then asserted that "I can conclusively state that I would not have granted a motion to recuse. I did not then, and I do not now, feel personal bias or prejudice towards [Franklin]. Furthermore, [Franklin] has not cited any fact which demonstrates that the Court's participation as the trial judge in this case inhibited the public's confidence and integrity in the judicial system." *Franklin,* Letter Opinion, at p.8.

The Delaware Supreme Court affirmed the Superior Court's denial of the recusal motion as well as its denial of the instant ineffective assistance of counsel claim. *See Franklin*, 2006 WL 1374675, at \*2. On habeas review, the court cannot re-examine the Delaware Supreme

24

Court's decision that any potential recusal motion relating to Franklin's rape trial lacked merit under Delaware law. *See McGuire*, 502 U.S. 62, 67-8 (1991). In turn, an attorney does not provide ineffective assistance by failing to raise meritless arguments or objections. *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999). Accordingly, the court concludes that the Delaware Supreme Court did not unreasonably apply *Strickland* in denying Franklin's argument that counsel performed ineffectively by failing to file a meritless recusal motion.

### 2. Failure to present mitigating evidence at sentencing

Franklin also contends that counsel provided ineffective assistance during sentencing by failing to present mitigating evidence that he was mentally slow. The Superior Court rejected this same argument because Franklin could not demonstrate the requisite prejudice under *Strickland*, explaining that the sentencing court knew that Franklin was of below average intelligence through the pre-sentence report. The Delaware Supreme Court affirmed this decision, further noting that counsel's "failure to produce mitigating evidence at sentencing had no effect on the mandatory sentences imposed in Franklin's case." *Franklin*, 2006 WL 1374675, at *2.

Given the fact the sentencing court knew that Franklin was of below average intelligence, Franklin cannot demonstrate a reasonable probability that his sentence would have been different but for counsel's failure to present this information. Accordingly, the Delaware Supreme Court reasonably applied *Strickland* in denying this claim.

### 3. Failure to object to Franklin's immediate sentencing

Finally, Franklin argues that counsel provided ineffective assistance by failing to object to his immediate sentencing. The Superior Court judge denied this argument as meritless, noting

25

that he had relied on pre-sentence report prepared one month earlier for Franklin's conviction for driving while under the influence. The judge explained that "it would [have been] a waste of taxpayer resources to require the preparation of another Presentence Report merely a month after the last report had been submitted . . ." *Franklin*, Letter Opinion, at p.7.

In this proceeding, Franklin does not present any evidence of how he was prejudiced by the immediate sentencing; he merely argues that counsel was ineffective for not objecting to the immediate sentencing. Moreover, nothing in the record suggests that a motion to delay Franklin's sentencing would have altered the outcome of his sentencing hearing. Accordingly, the court concludes that Franklin's third allegation regarding trial counsel's ineffective assistance does not warrant relief.

## E. Superior Court erred during Franklin's post-conviction proceeding

In his final claim, Franklin contends that the Superior Court erred by not requiring defense counsel to file a Rule 61 affidavit responding to his allegations of ineffective assistance. Claims alleging procedural errors in state collateral proceedings do not rise to the level of a constitutional violation warranting habeas relief. *See Lambert v. Blackwell*, 387 F.3d 210, 247 (3d Cir. 2004)(allegations of error in state post-conviction relief proceedings do not provide a proper basis for federal habeas relief). Consequently, to the extent Franklin is arguing that the Superior Court did not follow the proper state court procedure in reviewing his Rule 61 motion, the court concurs with the State's assertion that this argument asserts an error of state law, and therefore, fails to present an issue cognizable on federal habeas review.

However, to the extent Franklin alleges that the Delaware Supreme Court unreasonably applied *Strickland* in denying his complaint regarding the Superior Court's failure to require an

26

affidavit or hold a hearing, rather than challenging the procedure used by the Delaware state courts, the court concludes that Franklin's argument is cognizable, but still unavailing.

To begin, although the Delaware Supreme Court has opined that it is preferable if the Superior Court obtains a defense counsel's explanations in response to a petitioner's ineffective assistance allegations, there is no requirement under Delaware Superior Court Criminal Rule 61(g)(2) for defense counsel to submit an affidavit in every collateral proceeding. *See e.g. Comeger v. State*, 977 A.2d 898 (Table), 2009 WL 2426135 (Del. Aug. 10, 2005). In fact, the Superior Court can summarily dismiss a Rule 61 motion when it plainly appears from the Rule 61 motion and the record that the petitioner is not entitled to relief. *See* Del. Super. Ct. Crim. R. 61(d)(4).

Moreover, there is no United States Supreme Court precedent requiring state courts to automatically order attorneys to file responses to every ineffective assistance of counsel allegation. In addition, pursuant to *Strickland*, the performance component of the two-pronged *Strickland* test need not be addressed first if "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice." *Strickland,* 466 U.S. at 697. As explained by the *Strickland* Court,

> actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice. The government is not responsible for, and hence not able to prevent, attorney errors that will result in reversal of a conviction or sentence. Attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. . . . Even if a defendant shows that particular errors of counsel were unreasonable, [] the defendant must show that they actually had an adverse effect on the defense. . . . [A] court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

*Strickland*, 466 U.S. at 693, 696. A "reasonable probability" is a probability sufficient to

27

undermine confidence in the outcome. *Id.* at 694.

In Franklin's Rule 61 proceeding, the Superior Court presumed that counsel performed deficiently, and denied Franklin's ineffective assistance of counsel claim because Franklin failed to establish prejudice. In affirming the Superior Court's denial of the instant claim, the Delaware Supreme Court explained that,

> [w]hen considering Franklin's ineffective assistance of counsel claim, the trial judge assumed for the purpose of the argument that counsel's representation was unreasonable. Given that assumption, neither an affidavit nor a hearing was necessary."

*Franklin*, 2006 WL 1374675, at \*2.

In this proceeding, Franklin has not provided any indication that counsel's responses in a Rule 61 affidavit, or in an evidentiary hearing, would have helped to demonstrate prejudice under *Strickland.* Accordingly, to the extent claim five is cognizable on habeas review, the court concludes that the claim does not warrant relief because the Delaware Supreme Court's decision did not involve an unreasonable application of *Strickland.*

## V. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2008). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Further, when a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the prisoner must demonstrate that jurists of reason

28

would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack*, 529 U.S. at 484.

The court concludes that Franklin's petition does not warrant federal habeas relief. Reasonable jurists would not find this conclusion to be debatable. Consequently, the court declines to issue a certificate of appealability.

## VI. CONCLUSION

For the reasons stated, Franklin's petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied. An appropriate order shall issue.

29

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOHN M. FRANKLIN, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )     Civ. A. No. 06-378-GMS |
| | ) |
| PERRY PHELPS, Warden, and | ) |
| ATTORNEY GENERAL OF THE | ) |
| STATE OF DELAWARE, | ) |
| | ) |
| Respondents. | ) |

## ORDER

For the reasons set forth in the Memorandum Opinion issued this date, IT IS HEREBY

ORDERED that:

1. Petitioner John M. Franklin's petition for the writ of habeas corpus filed pursuant to

28 U.S.C § 2254 is DISMISSED, and the relief requested therein is DENIED. (D.I. 2.)

2. The court declines to issue a certificate of appealability due to Franklin's failure to

satisfy the standards set forth in 28 U.S.C. § 2253(c)(2).

CHIEF, UNITED STATES DISTRICT JUDGE

Dated: November ___16___, 2009